Maurice VerStandig, Esq.
Nevada Bar No.: 15346
THE VERSTANDIG LAW FIRM, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: (301) 444-4600
Facsimile: (301) 444-4600
Email:   mac@mbvesq.com
*Counsel for the Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| THE NEVADA DIVISION OF STATE LANDS, | * * * | |
| Plaintiff, | * * | Case No. 3:24-cv-00190-ART-CLB |
| v. | * * | |
| CINDY MARLIN; DANA MARLIN; MARLIN LIVING TRUST; DOES 1 to 100 and ROE CORPORATIONS 1 to 100, inclusive, | * * * * | |
| Defendants. | * * | |

**<u>OPPOSITION TO MOTION TO REMAND</u>**

Come now Cindy Marlin ("Ms. Marlin"), Dana Marlin ("Mr. Marlin") and the Marlin Living Trust (the "Trust") (collectively, the "Marlins" or "Defendants"), by and through undersigned counsel, pursuant to Local Rule 7-2(b), and in opposition to the Motion to Remand (the "Motion," as found at DE #7) filed by The Nevada Division of State Lands (the "Land Division" or "Plaintiff") state as follows:

I.   **Introduction**

The Motion merits denial because the Land Division has erroneously conflated the standard governing sovereign immunity with the standard governing citizenship for purposes of



OPPOSITION TO MOTION TO REMAND - 1

assessing diversity jurisdiction. Whether or not the Plaintiff is protected from suit under the Eleventh Amendment is immaterial to the case at bar, where it is the Land Division that has commenced litigation and where it is private citizens who have been summoned into court. The question, rather, is whether the Land Division is a citizen of Nevada for purposes of establishing diversity jurisdiction. This is a question that is not properly addressed in the Motion and, upon review of the relevant governing standard, it is a question that is answered in the affirmative.

To be sure, the issues of sovereign immunity and diversity of citizenship frequently arise in tandem, as a great many suits are brought against governmental bodies by members of the public. And, as discussed *infra*, such has led to the creation of a body of caselaw—oft-invoked by the Plaintiff in the Motion—where the very capacity of a government body to be sued intrinsically informs jurisdictional analysis. But this is not one such proceeding. The Marlins have neither initiated litigation nor stated a claim against the Land Division; the Marlins have simply been sued in a state that is not their home and, in a statutorily-timely manner, exercised their right to have the subject suit heard in a federal court.

There is no dispute but that the Defendants are citizens of California. As set forth in the notice of removal (the "Removal Notice," as found at DE #1) and herein, the Land Division is a citizen of Nevada. The Plaintiff does not dispute that the amount in controversy exceeds the statutory threshold for invocation of federal jurisdiction. And the Motion thusly merits denial, as this case is properly diverse in nature and ripe to proceed in this Honorable Court.

**II.     Standard**

Removal of a case from state to federal court is governed by Title 28 of the United States Code, which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district

OPPOSITION TO MOTION TO REMAND - 2

court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. The removing defendant must file a notice of removal in the appropriate United States District Court, together with all process, pleadings, and orders served upon the defendant. 28 U.S.C. § 1446(a).

Federal diversity jurisdiction requires that the parities be "citizens of different states" and the amount-in-controversy exceed $75,000.00. 28 U.S.C. § 1332.

In determining whether removal is proper, the removing party only needs to demonstrate such by a preponderance of the evidence standard. *See Cohn v. Petsmart, Inc*., 281 F.3d 837, 839 (9th Cir. 2002); *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005).

**III.     Argument: Sovereign Immunity is Immaterial**

Much of the Motion is rooted in an assertion that the Land Division enjoys sovereign immunity that has been neither waived nor abrogated. Such may—or may not—be accurate; a complex, multi-pronged, disjunctive test controls the application of sovereign immunity to government actors. Yet the application and outcome of that test are irrelevant to the case at bar for the simple reason that the Marlins are not suing the Land Division or any other governmental body.

The United States Court of Appeals for the Ninth Circuit has unequivocally held that "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 848 (9th Cir. 2004). *See also City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1123 (9th Cir. 2006) ("The Attorney General contends that sovereign immunity barred the removal of his action to federal court. However, the Attorney General was the plaintiff in the original section 17200 action brought in

OPPOSITION TO MOTION TO REMAND - 3

state court. Therefore, removal of that action was not prohibited by the Eleventh Amendment.") (citing *Dynegy*, 375 F.3d at 848).

In *Dynegy*, the State of California brought suit in state court, seeking myriad remedies against a private company accused of manipulating the energy distribution market. *Dynegy*, 375 F.3d at 836. The defendant removed the matter to the United States District Court for the Northern District of California. *Id.* at 836-37. The State of California then sought to remand the case to state court based on an assertion that Eleventh Amendment immunity protects a governmental plaintiff from removal to federal court. *Id.* After conducting a thorough analysis of the Eleventh Amendment's history and the well-settled manner in which a sovereign waives immunity by commencing suit, the Ninth Circuit concluded that sovereign immunity does not protect a state actor's venue-centric "litigation choices." *Id.* at 848.

Moreover, while the Ninth Circuit holdings in *Dynegy* and *PG & E Corp.* are precedential in this Honorable Court, the holdings are also neither outliers nor the fodder of a so-called "circuit split." *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. 2007) ("Our holding today that sovereign immunity does not preclude the removal to federal court of a suit filed by a state plaintiff in state court is consistent with that reached by the vast majority of courts to have considered the issue."); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1240 (10th Cir. 2004) ("Consistent with the constitutional text, relevant pronouncements of the Supreme Court, and the vast majority of district court cases directly on point, we hold that the State may not assert its Eleventh Amendment immunity to preclude defendants' removal of the tort action it brought against them in its own courts."); *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22, 24 n.6 (5th Cir. 1980) ("Of course, the eleventh amendment is inapplicable where a state is a plaintiff. . ."); *Regents of the Univ. of*

OPPOSITION TO MOTION TO REMAND - 4

*California v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997) (". . . the Eleventh Amendment applies to suits 'against' a state, not suits by a state.").

The inapplicability of sovereign immunity to removal creates a problematic construct, insofar as the Motion appears to chiefly rest upon cases addressing Eleventh Amendment applicability—not citizenship for diversity purposes. The Plaintiff relies on *Mitchell v. Los Angeles Cmty. College Dist.*, 861 F.2d 198 (9th Cir. 1988) for the proposition that a five-prong test controls assessment of whether a government body is an "arm of the state." Motion, DE #7, at 4:20-5:2 (citing *Mitchell*, 861 F.2d at 201). Yet *Mitchell* is not topically relevant to the issues in this case.

In *Mitchell*, the plaintiff filed multiple administrative charges of discrimination "on the basis of race, sex and age. . ." *Mitchell*, 861 F.2d at 200. When those charges were unsuccessful, and the plaintiff was issued a so-called "Right to Sue" letter, he proceeded to bring suit in state court. *Id.* It was the defendants who then removed the matter to federal court. *Id.* Once removed, "[t]he court . . . found that all the facts alleged in the plaintiff's complaint related to actions by the individual defendants in their official capacities, acting within the course and scope of their employment. Therefore, the court found that they shared the district's eleventh amendment immunity." *Id.* at 201.

Thus the question in *Mitchell* was not one of removability but, rather, whether government actors enjoy sovereign immunity. It was the government actors—not the private citizens—who removed *Mitchell* to federal court in the first instance, and the reported opinion does not so much as suggest there to have been any dispute as to the propriety of removal, much less an effort to have the underlying case remanded. The factors delineated in *Mitchell*, which the Land Division

OPPOSITION TO MOTION TO REMAND - 5

relies on in this case for purposes of asserting it is an "arm of the state," are dispositive of sovereign immunity—not diversity of citizenship.

Indeed, it appears the Land Division has relied upon the wrong canon of case law in bringing the Motion. The inapposite nature of the Plaintiff's selected precedent is not limited to *Mitchell*; nearly every case cited by the Land Division concerns sovereign immunity and not diversity of citizenship. The Plaintiff first invokes *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002), *see* Motion, DE #7, at 2:17-18, n.1, but that case concerns the procedural occurrences through which a state may be deemed to have waived its sovereign immunity when standing in the role of a defendant. *Lapides*, 535 U.S. at 618-19.

Topically, the Plaintiff next relies on *State Highway Comm'n of Wyo. v. Utah Constr. Co.*, 278 U.S. 194 (1929) and *Ronwin v. Shapiro*, 657 F.2d 1071 (9th Cir. 1981). Yet the former case stands, relevantly, for the benign proposition that "[n]o consent by the state to submit itself to suit could affect the question of diverse citizenship," *State Highway Comm'n of Wyoming*, 278 U.S. at 199–200, a proposition that actually supports the Marlins' position *sub judice*. And the latter case simply furnishes the well-settled holding that "[t]he eleventh amendment bars suits in federal courts by private citizens against a state." *Ronwin*, 657 F.2d at 1073.

Similarly, the Plaintiff cites two Supreme Court cases as providing that "[t]he Eleventh Amendment bars suits against a state in federal court absent the state's unequivocal consent or valid Congressional abrogation." Motion, DE #7, at 4:16-17 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). And while the two cited cases certainly do support the stated contention, neither appears relevant herein. *Pennhurst* is a suit brought by a citizen *against* a government actor, *Pennhurst*, 415 U.S. at 92, and *Edelman* is a putative class action also brought *against* government actors, *Edelman*,

OPPOSITION TO MOTION TO REMAND - 6

415 U.S. at 653. Both cases were commenced in federal court and, as a necessary byproduct of such, neither case concerns questions of removal or the citizenship of litigants for diversity purposes.

The Land Division, in applying the *Mitchell* test for assessment of sovereign immunity, next relies on *Durning v. Citibank, N.A*., 950 F.2d 1419 (9th Cir. 1991) in asserting that "the 'state treasury factor' is the 'most important' in determining whether an entity is an arm of the state." Motion, DE #7, at 5:5-6. Yet not only do the words "state treasury factor" not appear anywhere in *Durning* but, more importantly, *Durning* is a securities fraud suit that was commenced in federal court, *Durning*, 950 F.2d at 1421, with neither removal nor diversity of citizenship being addressed.

Similarly, *Beentjes v. Placer Cty. Air Pollution Control Dist*., 397 F.3d 775 (9th Cir. 2005) —relied upon by the Land Division in discussing the role of a state treasury in satisfying a potential judgment, Motion, DE #7, at 5:6-8—is a case that was commenced in federal court, where only questions of pure sovereign immunity are implicated. The same goes for *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923 (9th Cir. 2017), where the plaintiff ". . . sued OCDE for damages in federal district court. . .," *Id.* at 927, and in which neither removal nor diversity of citizenship are addressed. *See* Motion, DE #7, at 5:10-12 (citing *Sato*). So, too, is true of *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836 (9th Cir. 1997), a case in which sovereign immunity is discussed in the prism of a Section 1983 claim and where neither removal nor diversity are addressed. *See* Motion, DE #7, at 5:15-17 (citing *Doe*).

The Land Division also relies on *Holz v. Nenana City Pub. Sch. Dist*., 347 F.3d 1176 (9th Cir. 2003) and *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992). *Id.* at 5:17-

OPPOSITION TO MOTION TO REMAND - 7

19. Both *Holz* and *Belanger* are similarly cases commenced in federal court, however, where removal and diversity jurisdiction do not form any portion of the relevant appellate discussion.

The foregoing matters because the Ninth Circuit has made clear, in *Dynegy* and *PG & E Corp.*, that sovereign immunity is inapplicable to questions of removability. Yet nearly all of the cases relied upon by the Land Division, for the impropriety of removal *sub judice*, concern the ability of a private citizen to commence suit against a state actor—not the ability of a private citizen to remove a suit commenced by a state actor. These are two palpably different areas of law; one concerns the degree to which governments may be compelled to answer for civil wrongs and the other implicates the right of diverse defendants, sued in a state other than that which they call home, to avail themselves of the federal judiciary.

While likely a byproduct of inadvertence, it is acutely problematic that the Land Division has asserted and applied the wrong standard in the Motion. The Defendants are now in the peculiar posture of responding to the Plaintiff's challenge of removability in a procedural prism where the Plaintiff has not actually addressed the pertinent factors, much less made arguments concerning the application of those factors.

**IV.     Argument: The Plaintiff is a Citizen of Nevada for Purposes of Diversity Jurisdiction**

Since sovereign immunity is topically immaterial when a government actor is the plaintiff, the question of citizenship is not one derivative of Eleventh Amendment case law but, rather, one derivative of precedent concerning diversity jurisdiction. The topical case law emanates from a Supreme Court holding and shows, with some clarity, that the Land Division is to be regarded as a citizen of the State of Nevada for jurisdictional purposes. Accordingly, this is a suit brought by

OPPOSITION TO MOTION TO REMAND - 8

a citizen of one state, against citizens of another state, in which the sum in controversy exceeds $75,000.00, and removal is thusly proper.

As observed in the Removal Notice, the question of citizenship is governed by *Moor v. Alameda Cnty.*, 411 U.S. 693 (1973). *See* Removal Notice, DE #1, at 2:11-15. There, the Supreme Court held, *inter alia*, ". . . a political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State for diversity purposes." *Moor*, 411 U.S. at 717 (citing *Bullard v. City of Cisco*, 290 U.S. 179 (1933); *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 485-86 (1900); *Chicot County v. Sherwood*, 148 U.S. 529, 533-34 (1893); *Lincoln County v. Luning*, 133 U.S. 529 (1890); *Cowles v. Mercer County*, 7 Wall. 118 (1868)).

In construing *Moor*, this Honorable Court has held that "*[t]he real party in interest, rather than the names of particular parties, is the important factor in determining whether there is diversity jurisdiction.*" *Nevada ex rel. Colorado River Comm'n of Nevada v. Pioneer Companies, Inc.*, 245 F. Supp. 2d 1120, 1129 (D. Nev. 2003) (quoting *DeLong Corp. v. Oregon State Highway Comm'n,* 233 F.Supp. 7, 10 (D. Or. 1964)) (emphasis added by *Pioneer Companies* Court). *See also Univ. of Idaho v. Great Am. Ins. Co.*, 2005 WL 2367538, at *2 (D. Idaho Sept. 27, 2005) ("In determining whether the agency is an alter ego of the state or an independent agency, the essential question is whether the state is the real party in interest in the lawsuit."); *E. Sav. Bank v. Walker*, 775 F. Supp. 2d 565, 568 (E.D.N.Y. 2011) ("For the purpose of diversity jurisdiction, the determinative factor is whether the state is the real party in interest.") (quoting *Krisel v. Duran*, 386 F.2d 179, 181 (2d Cir. 1967)).

By filing suit in the first instance, the Land Division has asserted that it is, in fact, the real party in interest. *See Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (". . . we additionally require as a prudential matter that [the plaintiff] assert his own legal interests as the

OPPOSITION TO MOTION TO REMAND - 9

real party in interest. . .") (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). *See also In re Mitchell*, 2009 WL 1044368, at *2 (Bankr. D. Nev. Mar. 31, 2009), aff'd, 423 B.R. 914 (D. Nev. 2009) ("As a prudential matter, a plaintiff must assert 'his own legal interests as the real party in interest,' as found in Fed. R. Civ. P. 17, which provides '[a]n action must be prosecuted in the name of the real party in interest.'") (quoting *Dunmore*, 358 F.3d at 1112) (cleaned up);[1] *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 61 (9th Cir. 1994) ("The prudential limitations include a requirement that the plaintiff 'assert his own rights, rather than rely on the rights or interests of a third party. . .'") (quoting *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987)).

To be sure, under both federal and state law, if the Land Division is not the "real party in interest," then the Land Division lacked standing to commence this suit in the first instance. *See, e.g.*, *Leppaluoto v. Nazarian*, 895 F.2d 1417 (9th Cir. 1990) ("Because we find that Leppaluoto was not the real party in interest, we conclude that he lacks standing to sue Nazarian and affirm the district court."); *Arguello v. Sunset Station, Inc.*, 252 P.3d 206, 208 (Nev. 2011) ("The inquiry into whether a party is a real party in interest overlaps with the question of standing."); *IM EX Trading Co. v. Vessel, BEATE OLDENDORFF*, 841 F. Supp. 1151, 1153 (M.D. Fla. 1993) ("In

---

[1] Insofar as this suit was commenced in state court, it bears notation that the relevant portion of Nevada Rule of Civil Procedure 17 is identical to Federal Rule of Civil Procedure 17. *Compare* Nev. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.") *and* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). Under Nevada law, "[f]ederal cases interpreting the Federal Rules of Civil Procedure 'are strong persuasive authority, because the Nevada Rules of Civil Procedure are based in large part upon their federal counterparts.'" *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872, 876 (Nev. 2002) (citing *Las Vegas Novelty v. Fernandez*, 787 P.2d 772, 776 (Nev. 1990)).



OPPOSITION TO MOTION TO REMAND - 10

sum, the Court finds that Im Ex is not the real party in interest, and therefore lacks standing to maintain this lawsuit for damage to the shipment of pears.").[2]

Indeed, under this Honorable Court's holding in *Pioneer Companies*, identification of the "real party in interest" is dispositive of whether or not there exists diversity jurisdiction. In this case, the Plaintiff clearly asserts that it is the real party in interest, as evidenced by the fact that the Plaintiff has brought suit in its own name. And the assertions of a party, in an underlying complaint, constitute judicial admissions. *Raebel v. Tesla, Inc.*, 451 F. Supp. 3d 1183, 1189 (D. Nev. 2020) (citing *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008); *In re Barker*, 839 F.3d 1189, 1195 (9th Cir. 2016)). *See also Empire Tech. Grp. Ltd. v. Light & Wonder, Inc.*, --- F.Supp.3d ----, 2023 WL 8529084, at *3 (D. Nev. Dec. 7, 2023) ("[a] statement in a complaint ... is a judicial admission[.]") (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)).

Yet even if the inquiry were to extend beyond the contours of *Pioneer Companies*, many of the dispositive indicators cited by the Supreme Court do, too, demonstrate that the Plaintiff is not to be regarded as a mere arm or alter ego of the State of Nevada. *Moor* identifies various disjunctive factors to be assessed in determining if a government actor is "the arm or alter ego" of a given state, including whether the government body may sue and be sued, whether the government body may enter into contracts, and whether the government body provides "a variety

---

[2] There *does* exist some daylight between these two distinct-but-overlapping doctrines, *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017), but the distinction is largely immaterial in the context of the challenge raised by the Motion: if the Land Division is *not* the real party in interest, then the Land Division is not "entitled to enforce the right" upon which this suit is founded, *Id.* (quoting 6A Wright & Miller, Federal Practice & Procedure, § 1543 (3d ed.)).



OPPOSITION TO MOTION TO REMAND - 11

of public services such as water service, flood control, rubbish disposal, and harbor and airport facilities." *Moor*, 411 U.S. at 719-20.

Here, as evidenced by the existence of the instant suit, the Plaintiff has the capacity to sue and be sued. *See also* Motion, DE #7, at 5:15 (noting the Plaintiff "has the statutory right to sue and be sued in its own name. . ."). Equally, the State of Nevada's regulatory scheme reveals myriad instances of the Land Division having the capacity to enter into contracts in its own name. *See* Nev. Admin. Code 321.454(2) ("The Division may enter into contracts or agreements with nonprofit conservation organizations in an amount not to exceed $15,000,000 to acquire land and water or interests in land and water for the public benefit to protect and enhance wildlife habitat, sensitive or unique vegetation, historic or cultural resources, riparian corridors, floodplains and wetlands and other environmental resources."); Nev. Admin. Code 321.464 (further addressing the Land Division's right to contract under Section 321.454 of the Nevada Administrative Code); Nev. Admin. Code 321.466 (same).

The Land Division also serves the variety of "public services" referenced by the *Moor* Court. The aforementioned regulatory scheme directs the Plaintiff to award "grants of money" of up to $7.25 million "for the construction of recreational trails," alongside grants of up to $5 million "for the acquisition of land and water or interests in land and water for urban parks or greenbelts." Nev. Admin. Code 321.454(1). Recreational trails, parks, and greenbelts would seem the epitome of public services, and the Land Division has the freestanding authority to oversee such projects through the making of strategic grants and the entering into of accompanying contracts.

Moreover, even outside of Nevada, case law shows that statewide government agencies have, time and again, been found to be citizens of their respective states for diversity purposes.

OPPOSITION TO MOTION TO REMAND - 12

The First Circuit has held the Rhode Island Board of Higher Education to be a citizen of Rhode Island, in the context of a suit commenced by the governmental body in state court and removed by the defendant to federal court. *Univ. of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200 (1st Cir. 1993). The Fourth Circuit has found the State of Wisconsin Investment Board to similarly be a citizen of the state for purposes of removal on the basis of diversity jurisdiction. *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 598 (4th Cir. 2006). And the Southern District of New York has held the State Board of Administration of Florida to be a citizen of the Sunshine State in the prism of assessing diversity jurisdiction. *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 921 F. Supp. 2d 158, 160 (S.D.N.Y. 2013).

The Land Division is the real party in interest in this case. The Land Division has the capacity to sue and be sued. The Land Division has the capacity to enter into contracts in its own name. The Land Division furnishes public services typical of a governmental body that is a citizen of a given state. And the Land Division has brought suit, for a sum in excess of $75,000.00, against three citizens of California. Removal of this matter is thusly proper under *Moor*, *Pioneer Companies*, and other applicable case law.

## V.  Conclusion

Removal has long been a favored tool of litigants summoned to defend suits in courts outside their home states. Tethered to various public policy interests—ranging from anachronistic concerns about bias to still ever-present concerns about inconvenience and the subjectively-peculiar nature of local judicial customs—removal is a slight tool when juxtaposed to the numerous elections afforded a plaintiff opting to bring suit in the first instance. Yet it is an important tool nonetheless.

The Marlins did not choose to be sued. And the Marlins have little choice but to now expend the time, energies and monies required to defend this case, as is so often noted by litigants on the righthand side of the proverbial "v." But Title 28 of the United States Code does afford the Marlins the choice to have their case heard in federal court, when it is for a sufficient sum and brought in a state other than their own by a citizen of a state other than their own. The exercise of this core right is little consolation for nonetheless having to confront the traumas of litigation, but it is also one of the few meaningful elections the Marlins are able to make in determining how and where this suit will proceed. They believe they have properly invoked that right, and, as discussed *passim*, it is respectfully urged this Honorable Court hold accordingly.

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: (301) 444-4600
Facsimile: (301) 444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

*[Certificate of Service on Following Page]*



OPPOSITION TO MOTION TO REMAND - 14

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of May, 2024, I caused a copy of the foregoing to be served via filing through this Honorable Court's CM/ECF system, with a copy being thereby transmitted to:

    Nathan C. Holland, Esq.
    Office of the Attorney General
    100 N. Carson Street
    Carson City, Nevada 89701
    nholland@ag.nv.gov

    Jordan K. Laub, Esq.
    Office of the Attorney General
    100 N. Carson Street
    Carson City, Nevada 89701
    jklaub@ag.nv.gov

                                         /s/ Maurice B. VerStandig
                                         Maurice B. VerStandig, Esq.

OPPOSITION TO MOTION TO REMAND - 15